IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

A<span/>NN M<span/>AH,

        Plaintiff,

v.                                    Case No. 12-4148-JTM

S<span/>HAWNEE C<span/>OUNTY C<span/>OMMISSION,

        Defendant

K<span/>RIS W. K<span/>OBACH
Kansas Secretary of State

        Defendant-Intervenor.

MEMORANDUM AND ORDER

The following matter came before the court on November 14, 2012, for hearing on the Secretary of State's Motion for Temporary Restraining Order (Dkt. 2) and Motion to Amend Complaint (Dkt. 5). The Secretary asked this court for a Temporary Restraining Order, a preliminary and permanent injunction, and declaratory judgment.

The following persons were present at the hearing: (1) Margie Wakefield, counsel for Ann Mah, (2) Steve Smith, counsel for Ann Mah, (3) Kris Kobach, Secretary of State, defendant-intervenor, (4) Ryan Kriegshauser, counsel for the Secretary of State, (5) B.J. Harden, counsel for the Secretary of State, (6) Josh Ney, counsel for Ken Corbet, (7) Evan Ice, counsel for the Douglas County Commission, and (8) James Crowell, Assistant Shawnee County Counselor.

After hearing arguments from Mr. Kobach, Mr. Smith, Mr. Ney, and Mr. Ice, the court denies the Secretary of State's Motions.

**I. Procedural Background**

Representative Ann Mah, the incumbent candidate for the 54th District of the Kansas House of Representatives, made a Kansas Open Records Act request seeking the names of individuals who cast provisional ballots in her race. The Board of County Commissioners of Shawnee County denied the request based on K.S.A. § 25-2422, which prohibits disclosure of the contents of ballots "except as ordered by a court of competent jurisdiction." Representative Mah filed a petition in Shawnee County Court, which she alleged to be a "court of competent jurisdiction." Shawnee County Court ordered the Shawnee County Election Office to disclose to the petitioner "the names of all voters who cast provisional ballots for the 54th House District in Shawnee County . . . by 6:00 p.m. on Friday, November 9, 2012." The Court noted that the petitioner was not requesting information regarding the content of any ballot or the reason voters cast a provisional ballot. The Shawnee County Election Commission disclosed the names before 6:00 p.m. on November 9, as the court had ordered.

On the same afternoon, Secretary of State Kris Kobach filed a Motion for Temporary Restraining Order in U.S. District Court, District of Kansas asking the court to prevent the disclosure of these provisional ballot voters' names. The Secretary argued that the disclosure of these names would be in violation of 42 U.S.C. 15482(a)(5)(B). On Tuesday, November 13, the court held a phone conference with the parties. The court scheduled a hearing with the parties for Wednesday, November 14 at 1:30 p.m. Over

2

the phone, the court directed Representative Mah not to contact any of the voters from the list she had received and not to distribute the list further until after the hearing. The court also directed the Douglas County officials to provide the list to Mr. Corbet, subject to the same "no contact" order.

**II. Legal Background**

The Secretary's requested relief is based on the Helping America Vote Act ("HAVA"). Congress passed HAVA as a response to voting irregularities in Florida during the 2000 presidential election. *See Florida Democratic Party v. Hood*, 342 F. Supp. 3d 1073, 1076 (N.D. Florida Oct. 21, 2004). In November 2000, if a person who showed up to a polling place on election day was determined ineligible to vote by election officials at that time, Florida did not allow the person to cast a ballot. *Id.* at 1077. As a result, any incorrect determination that the person was ineligible to vote could not be corrected. *Id.* Many other states had no system in place to cure this problem. *Id.*

Congress alleviated this problem by passing HAVA. This law requires a system for provisional balloting, under which a voter could submit a ballot on election day but it would only be counted if the person was later determined to have been entitled to vote. *See* 42 U.S.C. § 15842(a). HAVA also requires the appropriate State or local election officials to establish a free access system that a person casting a provisional ballot can use to discover whether her vote was counted and if not, the reason for it. *See* § 15842(a)(5)(B).

The law states:

3

> The appropriate State or local election official shall establish a free access system (such as a toll-free telephone number or an Internet website) that any individual who casts a provisional ballot may access to discover whether the vote of that individual was counted, and, if the vote was not counted, the reason that the vote was not counted.
> States described in section 1973gg-2(b) of this title may meet the requirements of this subsection using voter registration procedures established under applicable State law. The appropriate State or local official shall establish and maintain reasonable procedures necessary to protect the security, confidentiality, and integrity of personal information collected, stored, or otherwise used by the free access system established under paragraph (5)(B). *Access to information about an individual provisional ballot shall be restricted to the individual who cast the ballot.*

*Id.* (emphasis added). The Secretary asks this court for a Temporary Restraining Order and injunctive and declaratory relief all on the basis that this emphasized section of HAVA extends so far as to protect the names of voters who cast provisional ballots.

### III. Legal Conclusions

The Secretary of State argued that this court has federal question jurisdiction under 28 U.S.C. § 1331. The case is before the court on a question of interpreting a federal law, giving this court jurisdiction under § 1331. The other parties did not argue against jurisdiction, and this court agrees with the Secretary. Having established jurisdiction, the court analyzes the law before it.

The Secretary argues that this section of HAVA must be read broadly to include even the names of the voters who submitted provisional ballots. He argues that voting by provisional ballot is private because it could reveal private information. For example, if a voter drove to the polls without his driver's license, this would require him to submit a provisional ballot and might subject him to penalties for violating traffic laws

4

if his name was released. The Secretary worried about the hypothetical voter who might be embarrassed by having to vote provisionally because he forgot to change his address when he moved in with a girlfriend. Or that a person who forgot to register to vote might be embarrassed by having the oversight made public. These potential embarrassments are not at issue here, because only the names of the voters were released, not the reasons why they had to submit provisional ballots.

The Secretary also argued that in small counties, revealing the names of voters who submitted provisional ballots could reveal whom they voted for. The Secretary provided an example in which ten voters cast provisional ballots, and after the provisional ballots were counted Mitt Romney's vote total increased by ten votes. Releasing these voters names would logically show that they had all voted for Mitt Romney. However, according to the Douglas County Commission's counsel, the list of voters who cast provisional ballots is released after the county canvass determines which provisional ballots shall be counted. In essence, the risk of the Secretary's hypothetical actually occurring is not exacerbated by the release of these names before the canvass; it will happen after the canvass regardless.

Finally, the Secretary argues that interpreting § 15482(a)(5)(B) to refer only to the confidentiality of the ballot would result in a surplusage problem. The Secretary points to § 15481(a)(1)(C), which states that a voting system must preserve the "confidentiality of the ballot." He distinguishes this from § 15482(a)(5)(B), which protects information "about" a ballot, arguing that interpreting these two sections as both protecting only the ballot's contents would result in the latter phrase being mere surplusage.

The court disagrees with the Secretary's reading of § 15482(a)(5)(B) of HAVA. The plain language of the statute protects "access to information about an individual provisional ballot." It does not protect information "about the individual casting the ballot." The court need not address the Secretary's argument based on a canon of statutory construction. The court need not go any further than reading and applying the statute's plain meaning. Thus, § 15482(a)(5)(B) does not protect the names of the voters who cast provisional ballots. As a result, the court lifts the Temporary Restraining Order it had placed on the further dissemination of the list of provisional ballot casters, as well as its directions restricting contacting the voters who cast provisional ballots.

The Secretary also asks the court to require the free access system in Shawnee County to require an additional layer of security when a voter calls in to check on the status of their provisional ballot. The Secretary believes there is a risk of fraudulent calls, because the current system does not require any identification beyond the caller's name. Although the court sees merit in additional levels of security, it is not within the purview of this court to enter an order requiring such an action. HAVA clearly states that the specific choices on the methods of complying with the requirements of §15482 shall be left to the discretion of the State. *See* § 15485.

IT IS THEREFORE ORDERED this 15th day of November, 2012, that the Secretary's Motion for Temporary Restraining Order (Dkt. 2) and Motion to Amend Complaint (Dkt. 5) are denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE